```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X

MIGUEL MARQUEZ,                     :

                 Petitioner,        :
                                           08 Civ. 10847 (PKC)(HBP)
     -against-                      :
                                           MEMORANDUM OPINION
DALE A. ARTUS,                      :      AND ORDER

                 Respondent.        :

-----------------------------------X
```

PITMAN, United States Magistrate Judge:

Petitioner, an inmate in the custody of the New York State Department of Correctional Services, commenced this habeas corpus proceeding pursuant to 28 U.S.C. § 2254, claiming that his conviction violated certain of his federally protected rights. By motion dated November 19, 2008 (Docket Item 2), petitioner seeks to have counsel appointed to represent him pursuant to the Criminal Justice Act, 18 U.S.C. § 3006A. For the reasons set forth below, the motion is denied without prejudice to renewal.

It is well settled that there is no constitutional right to counsel in a habeas corpus proceeding such as this one; rather the appointment of counsel in such a proceeding is a matter of discretion. Wright v. West, 505 U.S. 277, 293 (1992); Pennsylvania v. Finley, 481 U.S. 551, 555-59 (1987); Heath v. United States Parole Comm'n, 788 F.2d 85, 88 (2d Cir. 1986); Moolenaar v. Mantella, 00 Civ. 6380 (RMB)(KNF), 2001 WL 43602 at

*1 (S.D.N.Y. Jan. 18, 2001).  Accordingly, petitioner's application should be analyzed in the same manner as any other application for pro bono counsel in a civil case.

The factors to be considered in ruling on a motion for pro bono counsel are well settled and include "the merits of plaintiff's case, the plaintiff's ability to pay for private counsel, [the plaintiff's] efforts to obtain a lawyer, the availability of counsel, and the plaintiff's ability to gather the facts and deal with the issues if unassisted by counsel."  Cooper v. A. Sargenti Co., 877 F.2d 170, 172 (2d Cir. 1989).  Of these, "[t]he factor which command[s] the most attention [is] the merits."  Id.  Accord Odom v. Sielaff, 90 Civ. 7659 (DAB), 1996 WL 208203 (S.D.N.Y. April 26, 1996); see Berry v. Kerik, 366 F.3d 85, 88 (2d Cir. 2003).  As noted fifteen years ago by the Court of Appeals:

> Courts do not perform a useful service if they appoint a volunteer lawyer to a case which a private lawyer would not take if it were brought to his or her attention.  Nor do courts perform a socially justified function when they request the services of a volunteer lawyer for a meritless case that no lawyer would take were the plaintiff not indigent.

Cooper v. A. Sargenti Co., supra, 877 F.2d at 174; see also Hendricks v. Coughlin, 114 F.3d 390, 392 (2d Cir. 1997) ("'In deciding whether to appoint counsel . . . the district judge should first determine whether the indigent's position seems likely to be of substance.'").

> The Court of Appeals for the Second Circuit has
>
> stated in various ways the applicable standard for assessing the merits of a pro se litigant's claim.  In Hodge [v. Police Officers, 802 F.2d 58 (2d Cir. 1986)], [the Court of Appeals] noted that "[e]ven where the claim is not frivolous, counsel is often unwarranted where the indigent's chances of success are extremely slim," and advised that a district judge should determine whether the pro se litigant's "position seems likely to be of substance," or showed "some chance of success."  Hodge, 802 F.2d at 60-61 (internal quotation marks and citation omitted).  In Cooper v. A. Sargenti Co., [the Court of Appeals] reiterated the importance of requiring indigent litigants seeking appointed counsel "to first pass the test of likely merit."  877 F.2d 170, 173 (2d Cir. 1989) (per curiam).

Ferrelli v. River Manor Health Care Ctr., 323 F.3d 196, 204 (2d Cir. 2003).

I am willing to assume that petitioner lacks the resources to retain counsel because he is incarcerated.  Although he provides no information on the subject, I am also willing to assume that petitioner needs an attorney because he has no legal training.  However, petitioner's application establishes none of the other elements relevant to an application for counsel.  For example, petitioner provides no information concerning the steps, if any, he has taken to find an attorney on his own.

In addition, it does not appear at this time that petitioner's claims are sufficiently meritorious to warrant the appointment of counsel.  Petitioner was convicted of assault in the first degree for which he was sentenced to fifteen years' imprisonment; he asserts two claims arising out of certain events

that occurred during his trial.  In his first claim, petitioner appears to be arguing that standards need to be established for the New York State Courts to determine whether a request for an instruction concerning a lesser included offense has been preserved.  In his second claim, petitioner appears to assert that standards need to be established for determining when the improper admission of evidence requires a grant of mistrial rather than merely the striking of the evidence and an instruction to the jury to disregard the evidence.  Petitioner raised both of these claims in his application for leave to appeal to the New York Court of Appeals.

On its face, the first claim appears to assert that the New York Court of Appeals should set procedural standards for New York's courts.  As such, the claim is a pure state law claim that is not cognizable in a federal habeas corpus proceeding. "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States."  Estelle v. McGuire, 502 U.S. 62, 68 (1991); see also Adams v. Greiner, 02 Civ. 6328 (GEL), 2004 WL 912085 at *2 (S.D.N.Y. Apr. 29, 2004) (Lynch, J.) ("Habeas corpus is not an extension of the appeals process in the state court. Rather, it is a remedy for violations of a defendant's rights under the federal constitution, and a very narrow remedy at that.").  Violations or errors of state law or procedure gener-

ally do not constitute grounds for habeas review.  Estelle v. McGuire, supra, 502 U.S. at 67-68, citing Lewis v. Jeffers, 497 U.S. 764, 780 (1990) and Pulley v. Harris, 465 U.S. 37, 41 (1984).

Even if I construe the first claim to assert a constitutional violation based on the Trial Court's failure to instruct the jury as to lesser included offenses, it still fails to allege a cognizable violation of the federal Constitution.  With respect to questions of law, federal habeas relief can be granted to a state prisoner only when the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . ."  28 U.S.C. § 2254(d).  "[C]learly established [f]ederal law . . . refers to the holdings, as opposed to the dicta, of th[e] [Supreme] Court's decisions as of the time of the relevant state-court decision."  Carey v. Musladin, 549 U.S. 70, 74 (2006) (internal quotations omitted).  "A petitioner cannot win habeas relief solely by demonstrating that the state court unreasonably applied Second Circuit precedent."  Yung v. Walker, 341 F.3d 104, 110 (2d Cir. 2003); accord DelValle v. Armstrong, 306 F.3d 1197, 1200 (2d Cir. 2002).

Although the Due Process Clause of the Fourteenth Amendment requires that lesser included offenses be considered by

the fact finder in capital cases, the Supreme Court has "expressly reserved the question of whether due process requires a lesser included offense instruction in the non-capital context." Caban v. Mitchell, 897 F. Supp. 759, 762 (S.D.N.Y. 1995), citing Beck v. Alabama, 447 U.S. 625, 638 n.14 (1980).  "The Second Circuit has also refrained from deciding that question, reasoning that such a holding would 'involve the announcement of a new rule' -- a result that is barred by Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), and that would not fit within either of the two Teague exceptions." Lindsey v. Fischer, 02 Civ. 1668 (LBS), 2004 WL 112884 at *7 (S.D.N.Y. Jan. 23, 2004); accord Knapp v. Leonardo, 46 F.3d 170, 179 (2d Cir. 1995), citing Rice v. Hoke, 846 F.2d 160, 164-65 (2d Cir. 1988); see Jones v. Hoffman, 86 F.3d 46, 48 (2d Cir. 1996); Mills v. Girdich, 614 F. Supp. 2d 365, 381-82 (W.D.N.Y. 2009); Martinez v. Miller, 9:04-CV-0090 (GTS/DEP), 2009 WL 1272069 at *26 (N.D.N.Y. May 5, 2009); Fleurant v. Duncan, 00-CV-7647 (JG), 2003 WL 22670920 at *9 (E.D.N.Y. Nov. 7, 2003); Bilbrew v. Garvin, 97-CV-1422 (JG), 2001 WL 91620 at *11 n.9 (E.D.N.Y. Jan. 10, 2001); Shannon v. Senkowski, 00 Civ. 2865 (NRB), 2000 WL 1683448 at *4 & n.2 (S.D.N.Y. Nov. 9, 2000); Sullivan v. O'Keefe, 00 Civ. 2292 (SAS), 2000 WL 1072304 at *5 (S.D.N.Y. Aug. 2, 2000); Till v. Miller, 96 Civ. 4387 (JGK), 1998 WL 397848 at *4 (S.D.N.Y. July 16, 1998).  Thus, the absence of any extant Supreme Court prece-

dent requiring that the jury be permitted to consider lesser included offenses in non-capital cases makes it extremely unlikely that petitioner will prevail on his first claim.

Petitioner's second claim arises out of the testimony of Joseph Miller, a witness for the prosecution.  Miller generally corroborated the victim's testimony concerning the facts of the offense (Declaration of Nancy D. Killian, Esq., dated February 24, 2009 ("Killian Decl."), Ex. 1 at 51).  After the commencement of Miller's cross-examination, Miller, who suffered from a psychiatric disorder, was unable to continue through cross-examination, and defense counsel sought a mistrial.  The Trial Court denied the motion for a mistrial.  Instead, the Trial Court struck all of Miller's testimony and gave the following instruction to the jury immediately after it became clear Miller could not complete cross-examination:

> [D]ue to another problem which the court considers of a very serious nature, the court wants to instruct you because of the sensitivity of the subject involved.
>
> Yesterday, you'll recall we had on the witness stand a Mr. Miller, a Mr. Joseph Miller, and Mr. Miller was under cross-examination.  We had commenced -- I'm sorry, was under direct examination, we had commenced cross-examination, and after fifteen minutes we had to interrupt that.  You'll recall that he had a little episode regarding certain medicines and so forth and so on.  The court has investigated further with regard to that situation and that condition and now is going to instruct you that it is striking in totality all of the testimony given by Mr. Miller.  You are not in any way to consider that testimony with respect to evidentiary matters in this trial.  Mr. Miller, it has been found out, is under serious and long-term psychiatric care.

> I think he even said somewhere during his testimony, some of you may have caught it, about being bipolar. We have found out that he is under drug treatment which could seriously have mind-altering effects.
>
> Because of the bipolar disease and because of these psychiatric conditions, which unfortunately are extant with regard to his young man, his testimony is totally unreliable and is not to be credited in any way. Because of this, you are to totally disregard it, and it should play no role whatsoever vis-a-vis any or all of these defendants herein. More particularly, what he said he saw, certain ice picks, guns, so forth and so on, all of that is to be disregarded by you as it concerns this witness, Mr. Miller, and you are all so instructed.

(Killian Decl., Ex. 2 at 32-33).

At the conclusion of the trial, the Trial Court reiterated its instruction that the jury must disregard all of Miller's testimony:

> We had one person, Mr. Miller, you will recall him. The Court struck his entire testimony, as you know, because the Court enunciated to you that it learned during the course of his testimony to you that he had serious mental or psychiatric illness and was fragile and volatile. In addition, he was taking certain drugs for bipolar disease. These are mind altering drugs and as a result, he was unable to conclude his testimony and, indeed, the Court did not permit him to conclude his testimony and told you for these reasons that his entire testimony was stricken and was to be disregarded. You must not draw any inference favorable or unfavorable to either side from Mr. Miller's inability to testify. Rather, you are to simply disregard anything he said and not have it come into your thought process in making a determination as to the guilt or non-guilt of these four people.

(Killian Decl. Ex. 2 at 34).

To the extent this claim is seeking the promulgation of standards for New York's own courts, it addresses a matter of

state procedural law and appears doomed to failure for the same reasons as plaintiff's first claim.  To the extent this claim can be construed as asserting that the Trial Court committed constitutional error by refusing to declare a mistrial, it is also unlikely to succeed.

Because Miller's testimony was not subjected to complete cross-examination, the alleged error is fairly characterized as the improper admission of hearsay.  The erroneous admission of evidence will provide a basis for habeas relief only when the evidence has a "'substantial and injurious effect.'"  Fry v. Pliler, 551 U.S. 112, 121 (2007), quoting Brecht v. Abrahamson, 507 U.S. 619, 623 (1993).[1]  It appears that petitioner will have substantial difficulty in meeting this standard.  The Trial Court promptly instructed the jury to disregard Miller's testimony and it repeated these instructions at the conclusion of the trial.  Juries are presumed to follow the instructions given to them.  Zafiro v. United States, 506 U.S. 534, 540 (1993), Richardson v. Marsh, 481 U.S. 200, 211 (1987).  In addition, it appears that Miller's testimony was cumulative of the testimony given by the victim describing the assault by petitioner; the cumulative

---

[1] Although the admission of Miller's testimony could arguably be viewed as a violation of the Confrontation Clause, petitioner never asserted such an argument on direct appeal.  Accordingly, I construe petitioner's argument concerning the admission of Miller's testimony to assert that the denial of a mistrial violated the Fourteenth Amendment as being fundamentally unfair.

nature of erroneously admitted testimony weighs against its having a "substantial and injurious effect." See generally Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986); Campaneria v. Reid, 891 F.2d 1014, 1022 (2d Cir. 1989).

Since it appears at this stage that the petition lacks likely merit I conclude the appointment of counsel for petitioner is not warranted.

Accordingly, for all the foregoing reasons, petitioner's motion for the appointment of counsel pursuant to the Criminal Justice Act is denied without prejudice to renewal. Any renewed application should be accompanied by an affidavit establishing the merits.

Dated: New York, New York
       September 22, 2009

SO ORDERED

HENRY PITMAN
United States Magistrate Judge

Copies mailed to:

Mr. Miguel Marquez
DIN No. 06-A-2569
Clinton Correctional Facility
P.O. Box 2002
Dannemora, New York   12929

Nancy D. Killian, Esq.
Assistant District Attorney
Bronx County
198 East 161st Street
Bronx, New York   10451